UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN ANN DOLECKI,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 22-cv-11685
Hon. Matthew F. Leitman

_____/

**ORDER (1) SUSTAINING PLAINTIFF'S OBJECTIONS IN PART (ECF No. 22) TO REPORT AND RECOMMENDATION (ECF No. 21); (2) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15); (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17); AND (4) REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

In this action, Plaintiff Karen Ann Dolecki challenges the denial of her application for disability insurance benefits under the Social Security Act. (*See* Compl., ECF No. 1.) Both Dolecki and Defendant Commissioner of Social Security filed motions for summary judgment. (*See* Mots., ECF Nos. 15, 17.) The assigned Magistrate Judge then issued a Report and Recommendation in which she recommended that the Court deny Dolecki's motion and grant the Commissioner's motion (the "R&R"). (*See* R&R, ECF No. 21.)

Dolecki has now filed timely objections to the R&R. (*See* Objections, ECF No. 22.) For the reasons explained below, the Court **SUSTAINS** the objections in part, **GRANTS IN PART** Dolecki's motion for summary judgment to the extent that it seeks a remand to the Commissioner for further administrative proceedings, **DENIES** the Commissioner's motion for summary judgment, and **REMANDS** this action to the Commissioner.

I

A

On January 20, 2020, Dolecki applied for disability insurance benefits under the Social Security Act. (*See* ECF No. 10-5, PageID.308-314.) In her application, Dolecki claimed that the following impairments, among others, limited her ability to work: depression, "anxiety with panic attacks daily," and "multiple back conditions" including scoliosis and spondylolisthesis. (*See* ECF No. 10-6, PageID.346.) The Social Security Administration denied her application on June 11, 2020. (*See* ECF No. 10-3, PageID.116.)

B

On February 3, 2021, Dolecki requested a hearing on her application before an Administrative Law Judge (the "ALJ"). That hearing was held on June 9, 2021. Both Dolecki and a vocational expert testified at the hearing. (*See* ECF No. 10-2, PageID.92-114.)

Relevant here, the ALJ also considered two medical source statements from professionals who treated Dolecki. First, the ALJ reviewed an opinion from nurse practitioner Gwendolyn Marshall. (*See* Marshall Op., ECF No. 10-7, PageID.975-978.) Marshall treated Dolceki at the Judson Center, a facility at which Dolecki received mental health treatment for depression and anxiety. Marshall explained that Dolecki suffered from both "major depression disorder" and "post traumatic stress disorder." (*See id.*, PageID.975.) Marshall also said that Dolecki's "depression ha[d] not been stabilized." (*Id.*) Finally, Marshall asserted that Dolecki would likely be "off task" 25-percent of the time or more, would be unable "to complete a normal workday and workweek without interruptions from psychologically based symptoms," and would be "unable to meet competitive standards" with respect to "deal[ing] with normal work stress." (*Id.*, PageID.976-977.)

Next, the ALJ reviewed a medical source statement from Dr. Christine Sheeler, one of Dolecki' s primary care physicians. (*See* Dr. Sheeler Op., *id.*, PageID.882-884.) Dr. Sheeler said that Dolecki suffered from scoliosis, lumbar spine stenosis, and a herniated disc. (*See id.*, PageID.882.) She also noted that Dolecki suffered from "diffuse back/hip pain," and "sharp shooting pains" that "worsened with positional changes and protracted sitting/standing/walking/ bending." (*Id.*) Dr. Sheeler opined that because of these conditions, Dolecki would

3

only be able to sit, stand, or walk for less than two hours in an 8-hour working day and that Dolecki could never twist, stood, crouch, squat, climb ladders, or climb stairs. (*See id.*, PageID.883-884.)

## C

The ALJ issued a written decision denying Dolecki's application for benefits on June 22, 2021. (*See* ECF No. 10-2, PageID.69-84.) The ALJ first concluded that Dolecki suffered from several "severe impairments" including "degenerative disc disease of the lumbar spine […], disc herniation at the T6-T7 level […], post-traumatic stress disorder (PTSD), major depressive disorder, and anxiety." (*Id.*, PageID.72.) The ALJ next determined that despite these severe impairments, Dolecki had the residual functional capacity ("RFC") to perform "light work" with the following restrictions:

> The claimant can frequently climb ramps or stairs but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. The claimant must avoid all hazards such as dangerous machinery and unprotected heights. The claimant is limited to simple and routine work that can be mastered within thirty days or by short demonstration. She is limited to simple work-related decisions. She can work in an environment with only occasional changes in the work setting or routine, and self-paced work only, that is not production rate work such as on an assembly line or conveyor belt. The claimant is limited to occasional interaction with the public, coworkers, and supervisors.

(*Id.*, PageID.76-77.) Finally, the ALJ found that "there [were] jobs that exist[ed] in significant numbers in the national economy that [Dolecki could] perform." (*Id.*, PageID.82.) The ALJ therefore held that Dolecki was not disabled and not entitled to benefits. Two aspects of the ALJ's opinion are relevant here.

First, the ALJ discounted Marshall's medical source statement. (*See id.*, PageID.81-82.) The ALJ explained that the limitations described in Marshall's opinion were "not consistent with [Dolecki's] treatment records from the Judson Center" in part because those "records indicate[d]" that Dolecki was "stable with treatment." (*Id.*, PageID.76.) The ALJ therefore found Marshall's opinion "not persuasive":

> The October 2020 opinion of Judson Center nurse practitioner Marshall is not persuasive (Exhibit 25F). She asserted that the claimant is unable to meet competitive standards or has no useful ability to function in several areas of mental functioning, would be off-task twenty-five percent or more of the workday, would miss more than four days of work per month, and has other mental limitations. Even though she has treated the claimant personally, such restrictive limitations are not consistent with the treatment records from the Judson Center. Specifically, Judson Center treatment notes from the day before indicated, "The claimant has a lighter mood and reports she has only had one depressive meltdown since the last session. She was started on Latuda and thus far it has provided some relief in her depressive mood" (Exhibit 26F/25). This indicates the claimant is relatively stable on medication. Rather, the mental

5

>status examination findings and reported activities of daily living discussed above establish the claimant retains the capacity to perform unskilled work within the workplace stress and social interaction parameters defined above (Exhibits 2F/13; 4F/3; 8F/3; 9F/36; 13F/6-7, 43-44; 24F/5, 23; 14F/30; 26F/12-13; 38F/15, 31, 51).

(*Id.*, PageID.81-82.) The ALJ also asserted that "[f]rom a mental standpoint, nothing in the file evidences [the] severe mental health limitations" that Marshall described:

>From a mental standpoint, nothing in the file evidences severe mental health limitations. The claimant has been consistent with her treatment at the Judson Center for Mental Health and has been diagnosed with multiple health issues such as depression, anxiety, and PTSD (Exhibits 13F; 26F; 38F). She also takes a heavy medication regimen that includes Risperdal 2 mg, Prazosin HCL 2 mg, Latuda, Clonopin 1 mg, gabapentin 300 mg three times a day, and Cymbalta 60 mg (e.g., Exhibit 38F/40). However, none of her treatment professionals have opined that this medication regimen would limit her in such a way as to make her disabled. In fact, the treatment notes from Judson Center are very sparse with details of treatment, limitations, and issues (Exhibits 13F; 26F; 38F). Summary pages in the Judson Center notes are often blank or sparse and include statements such as, "The claimant has a lighter mood and reports she has only had one depressive meltdown since the last session. She was started on Latuda and thus far it has provided some relief in her depressive mood" (Exhibit 26F/25). While recent Judson Center records mentioned the claimant endorsed feeling sad because

6

>of situational stressors like a friend's health problems, they indicated the claimant is becoming more stable and sleeping well (Exhibit 38F/41, 49).

(*Id.*, PageID.79.)

Second, the ALJ found that Dr. Sheeler's medical source statement was also "not persuasive." (*Id.*, PageID.80.) The ALJ explained her reasoning for discounting Dr. Sheeler's opinion as follows:

>Dr. Sheeler asserted the claimant would be off-task twenty-five percent more of workday, her depression and anxiety are triggered by stress, she can sit thirty minutes at a time, and stand thirty minutes of time, but she can only sit and stand and walk for less than two hours in an eight-hour workday. The doctor opines other limitations as well— such as never twisting, stooping, crouching, squatting, and climbing ladders and stairs and being absent more than four days per month— but these are not supported by the treatment records. In fact, even though she had treated the claimant every three to six months for the two years before she provided this statement as her primary care provider, there is nothing in the medical record that would support such extreme limitations. As discussed earlier, she has various musculoskeletal and gastrointestinal impairments, but clinical examinations routinely yielded unremarkable neurologic, gait, and abdominal findings (e.g., Exhibits 1F/4; 2F/4, 9; 4F/3-4, 7; 5F/2-3, 6; 6F/42; 9F/17, 23, 27, 46; 15F/6, 15; 39F/4, 7).

(*Id.*)

Dolecki appealed the ALJ's decision to the Appeals Council, but that body denied review. (*See id.*, PageID.53.)

7

## II

On July 22, 2022, Dolecki filed this action seeking judicial review of the administrative decision denying her application for benefits. (*See* Compl., ECF No. 1.) Dolecki and the Commissioner thereafter filed cross-motions for summary judgment. (*See* Dolecki Mot., ECF No. 15; Comm'r Mot., ECF No. 17.) In her motion for summary judgment, Dolecki argued that the ALJ failed to properly evaluate Marshall's and Dr. Sheeler's opinions and did not "adequately articulate" why those opinions were not persuasive. (*Id.*, PageID.1715-1728.)

The assigned Magistrate Judge issued the R&R on the parties' cross-motions on June 6, 2023. (*See* R&R, ECF No. 21.) The Magistrate Judge recommended granting the Commissioner's motion and denying Dolecki's motion. (*See id.*) With respect to Dolecki's arguments regarding the ALJ's treatment of Marshall's and Dr. Sheeler's opinions, the Magistrate Judge concluded that the ALJ adequately articulated the bases for her findings and complied with the "procedural requirements" for analyzing those opinions. (*Id.*, PageID.1794.)

## III

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004).

The Court has no duty to conduct an independent review of the portions of the R&R to which a party does not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## IV

Dolecki filed her objections to the R&R on June 20, 2023. (*See* Objections, ECF No. 22.) She primarily argues that "the Magistrate Judge improperly found that the ALJ properly articulated" her reasons for deeming unpersuasive the opinions of Marshall and Dr. Sheeler. (*See id.*, PageID.1832.) While this is a close question, the Court agrees with Dolecki that the ALJ did not sufficiently explain why she found Marshall's and Dr. Sheeler's opinions not persuasive.

### A

In March 2017, the Social Security Administration enacted new regulations that "displaced the former treating physician rule, which required substantial deference to the opinion of medical sources that had established a treating relationship with the claimant." *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 905 (E.D. Mich. 2021). "Now, the Social Security Administration 'will not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* (quoting 20 C.F.R. §§ 1520c(a), 416.920c(a)). And while "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions," they "still require that the ALJ provide a coherent explanation of her reasoning." *Id.* at 906

9

(internal punctuation omitted). Indeed, "[t]he new regulations set forth a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Id.* (internal punctuation and citation omitted). Here, there are significant questions about (1) whether the ALJ's rationales for discounting Marshall's and Dr. Sheeler's opinions are consistent with the medical evidence in the record and (2) how the ALJ considered that evidence when reaching her conclusions.

## B

The Court first addresses the ALJ's treatment of Marshall's opinion. As explained above, the ALJ discounted that opinion in part because the "restrictive limitations" that Marshall identified were not "consistent with the treatment records from the Judson Center." (ECF No. 10-2, PageID.81-82.) The ALJ said that those records undermined Marshall's opinion because they "indicate[d]" that Dolecki was "stable with treatment." (*Id.*, PageID.76, 81.)

This view of the Judson Center's records seems questionable. Indeed, substantial portions of those records – if not the clear majority of them – do *not* suggest that Dolecki was stable. For example, the records repeatedly indicate that Dolecki was depressed, had a poor attention span and concentration, and frequently changed medications and dosages (*See, e.g.*, ECF No. 10-7, PageID.795 ("The patient reports that her depression had been more since our last session"), 798, 937

10

("The patient reports that she is still very depressed. She has no ambition and her concentration is very bad"), 940, 955 ("The patient reports that she is still very depressed"). *See also* ECF No. 10-10, PageID.1661 (noting medication change due to lack of success of previous medications); 1653-1656 (reflecting discussion Dolecki had about a new medication because she had "tried every anti depressant on her Gene sight test [but] nothing ha[d] helped with her depression").) Thus, those records do not appear to support a conclusion that Dolecki was stable.

Moreover, the portions of the records highlighted by the ALJ as reflecting Dolecki's stability do not clearly indicate that Dolecki had achieved that condition. For instance, the ALJ stressed that a treatment note dated October 14, 2020, indicated that Dolecki was stable. (*See* ECF No. 10-2, PageID.81.) In the October 14 note, Dolecki's therapist reported that Dolecki was in a "lighter mood" and that Dolecki had "started on Latuda and thus far it has provided some relief in her depressive mood." (*Id.*, PageID.81, quoting ECF No. 10-7, PageID.1003.) But that same note indicated that even though Dolecki had experienced "some relief," she had still experienced at least one "depressive melt down" in the 30 days since her previous appointment. (ECF No. 10-7, PageID.1003.) The note also reflected that Dolecki had a "depressed" mood, that her "attention span and concentration" were "poor," and that she continued to suffer from "daily" flashbacks and occasional

11

nightmares.[1] (*Id.*, PageID.999, 1002.) Similarly, the ALJ cited an April 2021 Judson Center treatment note as evidence that Dolecki was "becoming more stable" (ECF No. 10-2, PageID.79, citing ECF No. 10-10, PageID.1667), but that reading of the note seems questionable. While the note reflects that Dolecki was "sleeping good," it also provides, on the very same page, that "her depression ha[s] not been any better." (ECF No. 10-10, PageID.1667.) The note also indicates that Dolecki's mood was "depressed" and that her "attention span and concentration" were "poor." (*Id.*, PageID.1669-1670.) For all of these reasons, it does not seem clear to the Court that the portions of the record highlighted by the ALJ reflect that Dolecki's condition had stabilized.

Finally, the ALJ's decision to discount Marshall's opinion seemed to rest, at least in part, upon another premise that appears difficult to square with the evidence. The ALJ appeared to discount Marshall's opinion because, in the ALJ's opinion, the Judson Center records reflected that Dolecki only "*occasionally* presented as depressed" and only "*occasionally* [was] noted to have poor attention span and concentration." (ECF No. 10-2, PageID.75; emphasis added.) However, it seems that *every* Judson Center record that reflected a finding about Dolecki's "mood"

---

[1] In addition, as noted in text above, Judson Center records from Dolecki's treatment after October 14 appear to confirm that she was not stable after that date. Those records reflect that Dolecki remained depressed, continued to have a poor attention span and concentration, and repeatedly changed her medication and dosages.

indicated that she was depressed, dysphoric, and/or anxious. (*See*, *e.g.*, ECF No. 10-7, PageID.751, 762, 773, 798, 940, 947, 958, 1002; ECF No. 10-10, PageID.1643-1644, 1669-1670.) Likewise, *every* Judson Center record also indicated that Dolecki's attention span and concentration were "poor." (*Id.*) Thus, there is a real question as to whether it is appropriate to deem Marshall's opinion unpersuasive on the basis that the Judson Center's records only "occasionally" reflect Dolecki's distress.

Because the ALJ's treatment of Marshall's opinion and her interpretation of the Judson Center's records raises so many questions, a remand is appropriate. On remand, the ALJ shall review all of the Judson Center's records and shall specifically explain how, in light of the questions raised by the Court above, those records undermine Marshall's opinions.[2] *See Hardy*, 554 F.Supp.3d at 907 (remanding for further administrative proceedings under the new regulations where the ALJ did not

---

[2] The ALJ suggested that the Judson Center's medical records do not support Marshall's opinions because the records contain summary pages that were "often blank or sparse." (ECF No. 10-2, PageID.79.) But, as noted above, the ALJ often relied upon and cited to those same records and summaries when attempting to support her opinions. The ALJ did not attempt to reconcile her reliance on the portions of the records that supported her conclusions with her view that the records contained insufficient detail to meaningfully support Marshall's opinions. On remand, it would be helpful for the ALJ to explain why the Judson Center records were sufficient to support her conclusions even though they were too "blank or sparse" to support Marshall's opinions.

13

sufficiently explain why the ALJ rejected the opinions of certain physicians who treated the claimant).

## C

The ALJ's treatment of Dr. Sheeler's opinion raises similar concerns. For instance, when the ALJ discounted Dr. Sheeler's opinion, she noted that the restrictions that Dr. Sheeler identified were "not supported by the treatment records" because, among other things, "clinical examinations [of Dolecki] routinely yielded unremarkable neurologic, gait, and abdominal findings." (ECF No. 10-2, PageID.80.) In support of that conclusion, the ALJ cited to several medical records, including a September 27, 2017, medical record from physician assistant Michael Schaffer. (*See* ECF No. 10-7, PageID.512-513.) But it is not clear why the ALJ cited that record to support the conclusion that Dolecki's "gait" was normal. In that report, Schaffer explained that with respect to Dolecki's "gait," both "[h]eel-toe and tandem walking [were] performed with *significant difficulty* likely secondary to pain." (*Id.* PageID.513; emphasis added.) That finding seems to be in substantial tension with the ALJ's conclusion that Dolecki's "clinical evaluations" with respect to her gait were "unremarkable."

## D

For all of the reasons explained above, the Court **SUSTAINS** Marshall's objections in part and remands this action to the Commissioner "to allow appropriate

14

consideration of the evidence and a proper application of the regulations." *Hardy*, 554 F.Supp.3d at 909. On remand, the ALJ shall review again the opinions offered by Marshall and Dr. Sheeler and, more specifically, shall consider those opinions in light of the evidence cited by the Court above. If the ALJ again finds those opinions to be unpersuasive, she shall explain – and with an eye toward answering the questions raised by the Court above – how the evidence in the record renders those opinions unworthy of any weight.

## V

Accordingly, **IT IS HEREBY ORDERED** that:

- Dolecki's objections to the R&R (ECF No. 22) are **SUSTAINED IN PART**;

- Dolecki's motion for summary judgment (ECF No. 15) is **GRANTED IN PART** to the extent that it seeks a remand for further administrative proceedings and **DENIED** in all other respects;

- The Commissioner's motion for summary judgment (ECF No. 17) is **DENIED**; and

- This action is remanded for further administrative proceedings consistent with this order.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: July 25, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 25, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
